CITY LOAN AND SAVINGS COMPANY, PLAINTIFF-APPELLANT, *v.* LUDWIG ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Seventh District, Columbiana County.

No. 826. Decided May 23, 1963.

294

*Messrs. Meredith, Meredith & Tait*, and *Messrs Lafferty & Lewis*, for plaintiff-appellant.

*Mr. John H. Cohen*, for defendant-appellee, Grace Rupert.

DONAHUE, P. J. This appeal was filed as one of law and fact. Appellant failed to file the necessary bond and the appeal was dismissed as to law and fact but retained on questions of law.

Plaintiff-appellant, City Loan and Savings Company and defendant-appellee, Grace Rupert, were victims of an automobile dealer whose fast shuffling of titles and duplicate titles left a complicated mess, to say the least.

This dealer took an order from Grace Rupert for a new car on November 18, 1960. On December 17, 1960, a car, as per order, was delivered to Mrs. Rupert, and paid for by her. At the same time she was given an invoice describing the car accurately and bearing the correct serial numbers. After a number of requests, Mrs. Rupert was given a title on February 3, 1961. She assumed that the title bore the correct serial number and found no reason to check it. In fact, it bore the serial of another car, the whereabouts and disposition of which do not appear in this case.

Meanwhile, the manufacture's title bearing the serial of the car in Mrs. Rupert's possession was pledged to a bank. Later, yet, the dealer in one of his routine shenanigans, filed an affidavit showing that the original title to this car was lost and secured a duplicate title. He then conveyed, under this duplicate, the title to the car in question to defendant Ludwig, who was one of his salesmen. The car was immediately mortgaged to plaintiff-appellant, who sent the dealer their check for $2,-068.23. It appear that one of this dealer's regular routines was the conveying of titles to this salesman, with a mortgage. Mortgagee would pay the dealer, then the dealer would make the

payments until the car was otherwise disposed of. Thus he enlarged his own credit by utilizing that of his salesmen. Ludwig, of course, knew all about this arrangement and participated actively, if not financially. In this particular case, there is no evidence that Ludwig had actual knowledge that the title he received and mortgaged bore the serial of the car in Mrs. Rupert's possession, and not of the car that he thought he was obtaining and which he was using. There is no evidence that appellant actually knew of the switch in titles at the time they advanced their money.

However, when the dealer's operation was blowing up, appellant appears to have dug up the facts swiftly. It took a cognovit judgment against Ludwig, made no effort to enforce its mortgage lien, but levied execution on the car shown in Ludwig's title which they listed as in Mrs. Rupert's possession.

We should note the fact above, which the parties seem to overlook occasionally in their briefs and arguments, that appellant's action here, was taking judgment on the note and then levying on the car which was listed in Ludwig's name.

Unimportant in this action, we believe, is the fact that the original manufacturer's certificate was returned by the bank to the dealer at some point but its whereabouts is now unknown.

Under the above facts situation, with a levy of execution under a judgment being made on a car which stands on the records in Ludwig's name, but which is and has been in Mrs. Rupert's possession, we believe it is fundamental that the creditor levying can rise no higher than the debtor. The creditor is not an innocent purchaser for value. His rights, insofar as the car is concerned, originate at the moment he levied execution.

Section 4505.04, Revised Code, is cited as controlling in this case. Under this section, which strictly regulates titles to automobiles, it has been held that the record title is the only evidence of ownership. This section was designed, we believe, to settle any questions arising between innocent purchasers, but has been interpreted to control all evidence of title. Therefore there is no question that if Ludwig and Mrs. Rupert were on otherwise equal footing Ludwig's record title would control.

Mrs. Rupert, having been brought into the case in the

course of the levy of execution, filed a cross-petition, securing a temporary injunction, restraining the levy, and asking that her title be corrected to show the serial number of the car that she had in her possession all along was the serial number shown on her title. She alleged fraud.

Mrs. Rupert unquestionably was an innocent purchaser for value. She received the car she had ordered, paid for it, and thought she had title to it. The fact that she did not was due to a clerical error to say the least. If this were all there were to the case, she would certainly be permitted to prevail in any action to correct her title.

As mentioned above, appellant's rights rise no higher than Ludwig's. What is his position? Is he an innocent purchaser for value as was Mrs. Rupert, thus putting him on the same plane? The record of title shows he purchaser a car from the dealer, bearing the serial of the car in Mrs. Rupert's possession. He did not know or believe this to be so. He thought the deal was for an entirely different car. Appellant thought so, too. What Ludwig did know was that the deal was strictly a dummy deal. He did not intend to purchase the car. He entered the deal as a favor, or as part of his job. If the car were sold the next day, he would have no voice in that sale. He had no control of the car. He knew that the deal was intended to officially fool the finance company. That company may quite possibly have known what the real deal was and, if so, was not as innocent as it seems. However, Ludwig did know that he was just a stand-in for the dealer and at the dealer's convenience and for his benefit. The dealer was still the practical owner of the car.

Therefore, any title the dealer would give to Ludwig would be tainted with his own misdeeds. The dealer's knowledge of his other machinations with titles would cloud any title he might give. He was charged with the knowledge that the title he gave to Mrs. Rupert was in error, whether that error was intentional or otherwise. Therefore, any attempt to transfer that title to his dummy agent, Ludwig, would be a constructive fraud to say the least, and would not convey a valid title as against a completely innocent purchaser. And since Ludwig did not receive a valid title, no levy of execution could reach it. Ap-

pellee, Rupert, having the only real claim, is entitled to the relief requested.

The judgment of the Common Pleas Court must be and hereby is affirmed.

FRANCE and BROWN, JJ., concur.